Lori HUBBARD, et al., Plaintiffs,

v.

CITY OF MIDDLETOWN,
et al., Defendants.

No. C–1–88–0229.

United States District Court,
S.D. Ohio, W.D.

Dec. 5, 1990.

Alphonse Adam Gerhardstein, Cincinnati, Ohio, for plaintiffs.

Brian Edward Hurley, Crabbe, Brown, Jones, Potts & Schmidt, Michael Edward Maundrell, Rendigs, Fry, Kiely & Dennis, Cincinnati, Ohio, Roger B. Turrell, Turrell & Phillips Co., L.P.A., Dayton, Ohio, Robert Joseph Gehring, Robert J. Gehring Co., LPA, Cincinnati, Ohio, for defendants.

## ORDER DENYING IN PART AND GRANTING IN PART MOTIONS BY DEFENDANT CITY OF MIDDLETOWN AND DEFENDANT ERNEST HOWARD FOR SUMMARY JUDGMENT

SPIEGEL, District Judge.

This matter is before the Court on defendant City of Middletown's motion for summary judgment (doc. 101) to which plaintiffs have responded (doc. 110) and the City has replied (doc. 114). Also before this Court is defendant Ernest Howard's motion for partial summary judgment (doc. 105) to which plaintiffs have responded (doc. 111) and Howard has replied (doc. 113). Further, plaintiffs have moved to file a supplemental memorandum opposing summary judgment (doc. 136) to which defendants voiced no objections at the hearing. Therefore, the motion to file the supplemental memorandum is granted. A hearing on all of these matters was held on October 26, 1990. For the following reasons, we conclude that both motions for summary judgment must be denied in part and granted in part.

## BACKGROUND

Lori Hubbard (Hubbard) is a twenty-three-year-old woman who was employed by the City of Middletown Police Department from May, 1986 to April, 1987. Gary Hubbard is Lori Hubbard's husband. Maronda Moneyham (Moneyham) is an eighteen year old woman who is not and has never been employed by the City of Middletown. Frank and Gail Moneyham are Moneyham's parents.

Russell Dwyer (Dwyer) is the former Chief of Police for the City of Middletown. Dwyer resigned his post July 2, 1987. Ernest Howard (Howard) is a police officer holding the rank of Major in the City of Middletown Police Department.

In August or September of 1987, Dwyer allegedly called Hubbard into his office and made sexual suggestions, and threats. Hubbard and Dwyer allegedly engaged in sexual relations between eight and twelve times over approximately a three to four month period. At no time was Hubbard's involvement voluntary. Hubbard repeatedly told Dwyer that she did not want to have a sexual relationship with him. Hubbard's last sexual contact with Dwyer was late January or early February, 1987. Hubbard was never again called into Dwyer's office after that meeting.

In April, 1987, Hubbard met with two police officers, Howard and Sergeant Henson, on an unrelated matter. During this meeting, Hubbard told the officers of her problems with Dwyer. Howard allegedly

suggested that she resign. There is a dispute as to whether Howard offered to take appropriate action. Hubbard resigned on April 14, 1987. One month later, the city manager began an investigation of Dwyer which culminated in Dwyer's resignation.

In early 1987, Dwyer met with sixteen-year-old Maronda Moneyham in his office. There is a dispute as to why the meeting took place, but it appears that Moneyham received a note from Dwyer to excuse her from school. Moneyham then took a bus to Dwyer's office to meet with him. Dwyer and Moneyham engaged in an ongoing sexual relationship through May, 1987.

Hubbard now alleges violations of 42 U.S.C. § 1983 in that she was deprived of her right to liberty, substantive due process, privacy, and bodily integrity, and § 703 of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2, as amended, in that she was discriminated against based upon her sex, against Dwyer, Howard, and the City. Hubbard further alleges pendent state claims for intentional infliction of emotional distress and assault and battery against Dwyer and the City, and a violation of Ohio Revised Code § 4112.99, against Dwyer, Howard and the City. Gary Hubbard alleges violations of 42 U.S.C. § 1983 for loss of his right to associate with his wife as protected by the Fourteenth Amendment, and under state law for loss of consortium and companionship.

Moneyham now alleges a violation of 42 U.S.C. § 1983 in that she was deprived of her right to liberty, substantive due process, privacy, and bodily integrity against Dwyer and the City. Moneyham further alleges pendent state claims for intentional infliction of emotional distress and assault and battery against Dwyer and the City. Frank and Gail Moneyham allege violations of 42 U.S.C. § 1983 for loss of their right to associate with their daughter as protected by the Fourteenth Amendment, and under state law for loss of relationship.

Jurisdiction over the Title VII claim is conferred on this Court by § 706(f)(3) of Title VII, 42 U.S.C. § 2000e–5(f)(3). Jurisdiction over the § 1983 claim is conferred on this Court by 28 U.S.C. § 1343(a)(3). This Court has pendent jurisdiction over the state law claims.

## PARTIES' ASSERTIONS

Defendant City of Middletown alleges that it is entitled to summary judgment on the following claims for the following reasons: (1) Plaintiffs' § 1983 claims must be dismissed because the City is not liable for Dwyer's actions as Dwyer did not possess the final decision making authority regarding sexual harassment of employees in the City police department nor did the City have a custom or usage of permitting sexual harassment; (2) Hubbard's and Moneyham's § 1983 claims must be dismissed because they have not established constitutional deprivations; (3) Gary Hubbard's and Frank and Gail Moneyham's § 1983 claims must be dismissed because they have not established constitutional deprivations; (4) All § 1983 claims must be dismissed because the plaintiffs have not alleged that state law is inadequate; (5) Hubbard's claim for injunctive relief must be denied as Dwyer was the cause of her problems and he is no longer employed by the City; (6) Hubbard's Title VII claim must be dismissed because Dwyer acted on his own and not for the benefit of the City and upon discovery of the incidents the City promptly investigated the allegations; (7) Hubbard's Title VII claim must be dismissed because her claim was not filed with the EEOC within 300 days after the alleged unlawful employment practice occurred; (8) The state law claims must be dismissed because the City is not liable under respondeat superior for Dwyer's intentional acts which are outside the scope of Dwyer's employment and were stimulated by Dwyer's exclusively personal motives; and (9) Hubbard's assault and battery claim is barred by the statute of limitations.

The Plaintiffs respond to these arguments as follows: (1) Dwyer possessed final decision making authority for the City in this case; (2) the City acquiesced in Dwyer's policy of harassing women at the Middletown Police Department; (3) Hub-

bard has established a constitutional claim for violation of her right to equal protection; (4) Moneyham has established a constitutional claim for invasion of her right to privacy and substantive due process; (5) Frank and Gail Moneyham and Gary Hubbard have established unconstitutional deprivations of substantive rights of association; (6) Plaintiffs are entitled to injunctive relief; (7) The City is liable for Dwyer's actions under Title VII because Dwyer had the final authority over working conditions for Hubbard and because city officials knew or reasonably should have known of this harassment; (8) The Title VII claim was timely filed with the EEOC because Hubbard was constructively discharged and was still in fear of Dwyer at the time of her discharge which was within 300 days of the filing with the EEOC; and (9) There is a question of fact as to whether Dwyer's actions were "expectable in view of the duties of the servant."

Defendant Howard alleges that he is entitled to partial summary judgment on the following claims for the following reasons: (1) Hubbard has failed to establish a violation of her constitutional rights; (2) Gary Hubbard has failed to establish a violation of his constitutional rights; (3) Howard is entitled to qualified immunity from liability from the Hubbards' § 1983 claims; and (4) The Hubbards are not entitled to recover punitive damages against Howard.

The plaintiffs respond to these arguments as follows: (1) There are disputed questions of fact that preclude summary judgment on the Hubbards' § 1983 claims; and (2) Howard is not entitled to qualified immunity as he directly participated in the harassment by encouraging Hubbard to leave city employment rather than investigating her charge of harassment.

## STANDARD

In considering a motion for summary judgment, the narrow question we must decide is whether there is "no genuine issues as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Rule 56(c), Fed.R.Civ.P. The Court cannot try issues of fact on a

Rule 56 motion, but is empowered to determine only whether there are issues to be tried. *In re Atlas Concrete Pipe, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). The moving party "has the burden of showing *conclusively* that there exists no genuine issues as to a material fact and the evidence together with all inferences to be drawn therefrom must be read in the light most favorable to the party opposing the motion." *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir.) (emphasis in original), *cert. denied*, 444 U.S. 986, 100 S.Ct. 495, 62 L.Ed.2d 415 (1979). And, "while the movant's papers are to be closely scrutinized, those of the opponent are to be viewed indulgently." *Id.* at 63. "[T]he District Court [is] obligated to consider not only the materials specifically offered in support of the motion, but also all 'pleadings, depositions, answers to interrogatories, and admissions' properly on file and thus properly before [the] court." *Id.* (quoting rule 56(c), Fed.R.Civ.P.). Summary judgment "must be used only with extreme caution for it operates to deny a litigant his day in court." *Id.* We are further guided by the supreme Court's recent elaboration of this standard in *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) as follows:

> ... the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial ...

477 U.S. at 322, 106 S.Ct. at 2552.

## DISCUSSION

### *A. City Policy or Custom*

■ Section 1 of the Civil Rights Act of 1871, Rev.Stat. § 1979, as amended, 42 U.S.C. § 1983, provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of

any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

A municipality is a "person" within the meaning of § 1983, and as such may be sued directly if "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). In that same case, the Court clearly rejected municipal liability under § 1983 for the acts of its employees under the doctrine of respondeat superior. *Id.* at 694, 98 S.Ct. at 2037.

■ Since *Monell,* the Court has more precisely defined the requirements establishing an unconstitutional municipal policy. To establish a municipal policy, the following prerequisites must be satisfied: (1) The municipality officially sanctioned or ordered the challenged action; (2) The actor or decisionmaker had final policymaking authority under state law; and (3) The actor or decisionmaker had final policymaking authority in the area of the city's business in question. *City of St. Louis v. Praprotnik*, 485 U.S. 112, 108 S.Ct. 915, 99 L.Ed.2d 107 (1988) (citing *Pembaur v. Cincinnati*, 475 U.S. 469, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986)).

■ In addition to municipal liability for an unconstitutional act pursuant to a municipal policy, § 1983 permits a direct action against the municipality "for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal approval through the body's official decisionmaking channels." *Monell*, 436 U.S. at 690–91, 98 S.Ct. at 2036. Under § 1983, a custom must be "so permanent and well settled as to constitute a 'custom or usage' with force of law." *Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926 (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68, 90 S.Ct. 1598, 1613–14, 26 L.Ed.2d 142 (1970)). Further, the custom must have the acquiescence of

a policymaker. *Jett v. Dallas Independent School District,* 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989).

■ State law (including local law) governs the determination as to who has final policymaking authority. *Jett,* 109 S.Ct. at 2723. "As with other questions of state law relevant to the application of federal law, the identification of those officials whose decisions represent the official policy of the local governmental unit is itself a legal question to be resolved by the trial judge *before* the case is submitted to the jury." *Id.* (emphasis in original). Once the judge has identified those officials whose decisions constitute official policy on a particular matter, it is for the jury to determine whether the alleged deprivation was caused by those decisions.

■ Although certain facts remain in dispute, it appears that Russell Dwyer had final policymaking authority as to sexual harassment within the Middletown Police Department and departmental contact with minors in the general public. "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegated by an official who possesses such authority...." *Praprotnik*, 485 U.S. at 124, 108 S.Ct. at 924. Ohio Revised Code section 737.06 states:

> The chief of police shall have *exclusive* control of the stationing and transfer of all patrolmen, auxiliary police officers, and other officers and employees in the police department, and police auxiliary unit, under such *general* rules and regulations as the director of public safety prescribes.

Ohio Rev.Code § 737.06 (Pages 1976) (emphasis added). Section 1115 of the Middletown Police Department Manual (Manual) states:

> *Departmental General Orders.* Written directives issued by the Chief of Police for the purpose of establishing policies, procedures, rules and regulations governing matters which affect the entire Department.
>
> These orders are the most authoritative directives issued and may be used to add,

amend, or cancel information in the Departmental Manual, Divisional Policy, and other Departmental Orders or directives.

It appears from these statutes that the Chief of Police had final policymaking authority in the areas of sexual harassment and public contact.

■ Further, if, as defendant alleges, the Middletown City Commissioners or the Director of Public Safety have final policymaking authority regarding sexual harassment by police officers, they delegated that authority to Russell Dwyer. Ohio Revised Code section 737.06 states that the Chief of Police has exclusive control "under such general rules and regulations as the Director of Public Safety prescribes." Ohio Rev.Code § 737.06 (Pages 1976). The director failed to provide regulations as to sexual harassment and public contact with minors thereby leaving Russell Dwyer to create his own policy. Thus, for purposes of this order only, this Court finds that Russell Dwyer had final policymaking authority regarding sexual harassment and public contact with minors in the Middletown Police Department.

■ Having decided that Dwyer had final policymaking authority under state law in the area of the city's business in question (i.e. sexual harassment and public contact with minors), the issue becomes whether the municipality sanctioned the challenged action. The evidence, viewed in favor of the non-moving plaintiff, indicates that the City acquiesced in Dwyer's behavior. Former City Manager William Burns stated in his deposition that he approached City Commissioner Gary Kaup in 1987 with concerns of Dwyer's sexual harassment and involvement with involuntary sexual relationships, and Kaup responded that such behavior had been taking place for years but the city did not desire to take action to stop him. Therefore, viewing the evidence in favor of the party opposing summary judgment, the City of Middletown may be liable for Dwyer's actions.

■ The fact that Dwyer misused his authority does not obviate municipal liability. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is taken 'under color of' state law" within the meaning of § 1983. *Sowers v. Bradford Area School District*, 694 F.Supp. 125 (W.D.Pa.1988) (quoting *United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 1043, 85 L.Ed. 1368 (1941). Thus, viewing the facts in the light most favorable to the plaintiffs, the plaintiffs' alleged harm resulted from the implementation of a city policy or custom.

## B. Hubbard's and Moneyham's Alleged Unconstitutional Deprivations

■ Hubbard has alleged a violation of her fourteenth amendment right to equal protection. Although a simple Title VII claim is insufficient to support a § 1983 claim, the Sixth Circuit has stated that "sexual harassment by government employers would violate the rights protected by the equal protection clause." *Poe v. Haydon*, 853 F.2d 418 (6th Cir.1988) (citing *Huebschen v. Department of Health and Social Services*, 716 F.2d 1167 (7th Cir. 1983)).

■ As to Moneyham, there is authority that sexual assault by a government agent in a position of relative authority violates the victim's fourteenth amendment right to substantive due process. *See, e.g., Stoneking v. Bradford Area School District*, 882 F.2d 720 (3d Cir.1989). There are genuine issues of material fact in this case as to why Moneyham, a minor, engaged in sexual activity with former police chief Dwyer. These issues include whether Dwyer used his position as police chief to intimidate an adolescent into cooperation and whether he used his position of authority to prey upon those in need of counsel and assistance. It has been alleged that Dwyer engaged in these sexual acts in his office, at the police department, while in uniform, and that he used his position as police chief to have Moneyham excused from school to meet with him. Therefore, both Hubbard and Moneyham have alleged unconstitutional deprivations, and the defendant City of Middletown's motion for summary judgment on Hubbard's and Mon-

eyham's § 1983 claims must be denied. Defendant Howard's motion for summary judgment on Hubbard's § 1983 claim must also be denied.

### C. Gary Hubbard's and Frank and Gail Moneyham's Alleged Unconstitutional Deprivations

■ Gary Hubbard has alleged a § 1983 claim for the deprivation of this right to associate with his wife under the first or fourteenth amendment. Likewise, Frank and Gail Moneyham have alleged § 1983 claims for the deprivation of their right to associate with their daughter under the first or fourteenth amendment. This Court does not dispute the importance of protecting the family as a fundamental unit of society. "[I]t is well established that there is a broadly defined liberty interest in preserving the integrity and stability of the family from intervention by the state without due process of law." *Greene v. City of New York*, 675 F.Supp. 110, 113 (S.D.N.Y.1987); *see Moore v. East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1973); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). In fact, many courts have recognized a § 1983 cause of action where the state has deprived a parent, child, or spouse of the right of the family to remain together. *See, e.g., Smith v. City of Fontana*, 818 F.2d 1411 (9th Cir. 1987) (children of deceased pretrial detainee); *Duchesne v. Sugarman*, 566 F.2d 817 (2d Cir.1977) (mother has § 1983 claim for seizure of her children by welfare authorities without a hearing or a court order); *East v. City of Chicago*, 719 F.Supp. 683 (N.D.Ill.1989) (mother of deceased arrestee).

However, those cases finding a constitutional deprivation under the fourteenth amendment concerned only the situation where a family member had been completely removed from the family unit due to state action (e.g. where a family member died due to excessive force by police officers or where a child was removed completely from parental custody without a hearing or a court order). Those cases finding a constitutional deprivation of the right to association under the first amendment concerned the situation where a group or organization tried to exclude a certain type of person from their group. *See, e.g., Bd. of Dir. of Rotary Int'l. v. Rotary Club of Duarte*, 481 U.S. 537, 107 S.Ct. 1940, 95 L.Ed.2d 474 (1987) (Rotary Club tried to exclude women).

In the case at bar, neither the claims of Gary Hubbard nor Frank and Gail Moneyham rise to the level of a constitutional violation. Neither Lori Hubbard nor Maronda Moneyham were completely removed from their respective family units. Therefore, defendant City of Middletown's motion for summary judgment on Gary Hubbard's and Frank and Gail Moneyham's § 1983 claims is hereby granted. Defendant Howard's motion for summary judgment on Gary Hubbard's § 1983 claim is also granted. This Court will continue to exercise pendent jurisdiction over Gary Hubbard's and Frank and Gail Moneyham's state claims against all defendants.

### D. Inadequacy of State Remedies

■ It is true, as defendants allege, that in order to state a § 1983 claim for violation of fourteenth amendment rights to procedural due process, a plaintiff must establish that state law remedies are inadequate. *See Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). However, the plaintiffs in this case do not allege violations of their rights to procedural due process. Hubbard and Moneyham allege violations of the substantive rights guaranteed by the fourteenth amendment. For that reason, *Parratt* and its progeny do not apply to the case at bar, and plaintiffs need not allege that state law remedies are inadequate.

### E. Injunctive Relief

■ This Court agrees that only Hubbard has standing to seek injunctive relief

regarding the Middletown Police Department's employment practices. However, it is not appropriate at this time to state unequivocally that Hubbard will not be entitled to injunctive relief as there are genuine issues of material fact as to what transpired at the Middletown Police Department. Therefore, defendant City of Middletown's motion for summary judgment on plaintiffs' claims for injunctive relief must be denied.

### F. Title VII

The relevant issue in determining whether an employer is liable for sexual harassment committed by its supervisors is whether the challenged acts were within the scope of the supervisor's employment. *Meritor v. Savings Bank FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986); *Yates v. Avco Corp.*, 819 F.2d 630 (6th Cir.1987); *Shrout v. Black Clawson Co.*, 689 F.Supp. 774 (S.D.Ohio 1988). Important considerations in making this determination include whether the acts complained of occurred during working hours, at the office, and were carried out by someone with authority in the workplace. *See Yates*, 819 F.2d at 636; *Shrout*, 689 F.Supp. at 781. In the case at bar, Hubbard was allegedly harassed at the police department during working hours by the chief of police. Further, there is some evidence that the city commissioners knew of and acquiesced in Dwyer's actions. If these allegations are proven at trial, the City of Middletown will be liable under Title VII for Dwyer's actions. Therefore, defendant City of Middletown's motion for summary judgment on plaintiff's Title VII claim must be denied.

### G. EEOC Filing

A Title VII claim must be filed with the Equal Employment Opportunity Commission (EEOC) within 300 days after the alleged unlawful employment practice occurred. Section 706(e), 42 U.S.C. § 2000e–5(e); *Mohasco Corp. v. Silver*, 447 U.S. 807, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980). Hubbard alleges that she filed charges with the EEOC on January 6, 1988. Although she alleges that her last physical contact with Dwyer was in late January or early February of 1987, she also alleges that she was constructively discharged due to this contact and the city's refusal to take action to stop this harassment in April of 1987. If the 300 day time limit did not begin to run until April, Hubbard's January filing with the EEOC was timely. Therefore, there is a genuine issue of material fact as to whether Hubbard timely filed her Title VII claim with the EEOC, and defendant City of Middletown's motion for summary judgment on Hubbard's Title VII claim must be denied.

### H. State Law Claims

As stated above, plaintiffs allege that the city commissioners knew that Dwyer was engaging in the challenged conduct, and that he had engaged in it before, but took no action to stop him from using his office as chief of police to sexually harass the women of Middletown. If these allegations are proven at trial, then the city is liable for Dwyer's intentional acts under state law. Thus, there is a genuine issue of material fact as to whether the city is liable under state law for Dwyer's conduct.

However, in Ohio, there is a one year statute of limitations for assault and battery. Ohio Rev.Code § 2305.11.1 (Pages 1989 Supp.). Hubbard has testified that her last contact with Dwyer occurred in late January or early February of 1987. Her complaint was filed in March, 1988. Thus, Hubbard's assault and battery claim is barred by the applicable statute of limitations. Therefore, defendant City of Middletown's motion for summary judgment on Hubbard's assault and battery claim is hereby granted. Defendant City of Middletown's motion for summary judgment on plaintiffs' remaining state claims is denied.

### I. Qualified Immunity

Public officials may be "shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S.

800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The constitutional right in question must have been established in a "particularized sense" at the time of the challenged action. *Anderson v. Creighton*, 483 U.S. 635, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). As stated by the United States Supreme Court:

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, ... but it is to say that in the light of pre-existing law the unlawfulness must be apparent.

*Id.* at 640, 107 S.Ct. at 3039; *Danese v. Asman*, 875 F.2d 1239 (6th Cir.1989).

The issue, then, is whether the illegality of Officer Howard's alleged actions were apparent at the time he acted. This Court stated in 1988 that "it is too late in the day for a public employer not to recognize a duty to take disciplinary action to correct conditions of sexual harassment." *Valerio v. Dahlberg*, 716 F.Supp. 1031, 1040 (S.D.Ohio 1988). However, the Sixth Circuit stated as recently as 1988 that:

> [Plaintiff] has not averred that "any of the supervisory officials who [are] defendants in this case actively participated in or authorized any harassment" by [defendant]. *Bellamy* [*v. Bradley*], 729 F.2d [416] at 421 [ (6th Cir.1984) ]. At best, [plaintiff] has merely claimed that the [defendants] were aware of alleged harassment, but did not take appropriate action. This is insufficient to impose liability on supervisory personnel under § 1983.

*Poe v. Haydon*, 853 F.2d 418, 429 (1988). Thus, the law appears to have been unsettled in 1987 as to whether a supervisor is liable for failing to take action to stop sexual harassment of which he has been made aware.

As early as 1982, though, it was clearly established that a supervisor is liable for another's sexual harassment under § 1983 where he "either encouraged the specific incident of misconduct or in some other way directly participated in it." *Hays v. Jefferson County*, 668 F.2d 869, 874 (6th Cir.), *cert. denied*, 459 U.S. 833, 103 S.Ct. 75, 74 L.Ed.2d 73 (1982). *See also Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845, 105 S.Ct. 156, 83 L.Ed.2d 93 (1984). Thus, the law was clearly established at the time Howard acted that a supervisor who encouraged or otherwise participated in another's sexual harassment is liable under § 1983.

Although the resolution of qualified immunity for government officials is a question of law (*Poe*, 853 F.2d at 424), that question must be determined on established facts in a particular case. In the case at bar, Hubbard alleges that Howard failed to act to stop the alleged sexual harassment *and* persuaded Hubbard to resign because of it. In deciding a motion for summary judgment, the Court must accept the facts as alleged by the non-moving party. If Hubbard's allegations are accepted as true, Howard has encouraged or participated in Hubbard's sexual harassment thereby violating clearly established constitutional rights. Therefore, defendant Howard's motion for summary judgment on Hubbard's § 1983 claim is hereby denied.

### J.  Punitive Damages

It is undisputed that the Ohio Supreme Court has recognized that punitive damages are subject to stringent standards. *See, e.g., Preston v. Murty*, 32 Ohio St.3d 334, 512 N.E.2d 1174 (1987). In *Villella v. Waikem Motors, Inc.*, 45 Ohio St.3d 36, 48, 543 N.E.2d 464 (1989), Justice Holmes stated that "punitive damages should be limited to those egregious situations which clearly call for punishment and deterrence beyond that which is inherent in compensatory awards." However, in the case at bar, there are genuine issues of material fact as to Howard's role in this alleged harassment. Therefore, defendant Howard's motion for summary judgment regarding punitive damages must be denied.

## CONCLUSION

Accordingly, for the reasons set forth above, this Court hereby grants defendant City of Middletown's motion for summary judgment as to Hubbard's claim for assault and battery and Gary Hubbard's and Frank and Gail Moneyham's § 1983 claims. Defendant City of Middletown's motion for summary judgment is denied in all other respects. Also, this Court hereby grants defendant Ernest Howard's motion for summary judgment as to Gary Hubbard's § 1983 claim, but denies Howard's motion for summary judgment in all other respects.

SO ORDERED.