Carolyn **MISSILDINE**, on behalf of herself, as administratrix of the estate of Robert Missildine and on behalf of the minor children of Robert Carl Missildine, Plaintiff,

v.

The **CITY OF MONTGOMERY**, a Municipal Corporation, The City of Montgomery Police Department an independent operating unit of the City of Montgomery, Emory Folmar, Mayor of the City of Montgomery, John Wilson, Chief of Montgomery Police Department, D.F. Phillips, and R.L. Dettmar, Defendants.

Civ. A. No. 95–D–526–N.

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 20, 1995.

Maurice S. Bell, David George Flack, Montgomery, AL, for plaintiff.

Thomas C. Tankersley, City of Montgomery Legal Department, Montgomery, AL, George B. Azar, Montgomery, AL, for defendants.

## MEMORANDUM OPINION

DE MENT, District Judge.

Before the court is defendants D.F. Phillips and R.L. Dettmar's motion filed May 15, 1995, to dismiss the above styled-case. Also before the court is defendants City of Montgomery, City of Montgomery Police Department, Emory Folmar and John Wilson's motion filed May 19, 1995, to dismiss the above styled-case. The plaintiff responded in opposition to both motions on June 14, 1995. Because the motions contain identical arguments, the court will address them simultaneously.

The court will also address defendants D.F. Phillips and R.L. Dettmar's motion filed August 10, 1995, to dismiss the plaintiff's amended complaint. The plaintiff responded in opposition of said motion on August 28, 1995. After careful consideration of the arguments of counsel, the relevant case law and the record as a whole, the court finds

that the defendants' motions are due to be granted.

## STANDARD FOR MOTION TO DISMISS

■ Pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, a defendant may move to dismiss a complaint on the ground that the plaintiff has failed to state a claim upon which relief may be granted. A Rule 12(b)(6) motion questions the legal sufficiency of a complaint; therefore, in assessing the merit of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir.1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See e.g., Sofarelli v. Pinellas County*, 931 F.2d 718, 721 (11th Cir.1991); *see also Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

■ On a motion to dismiss for failure to state a claim upon which relief may be granted, the movant "sustains a very high burden." [1] *Jackam v. Hospital Corp. of America Mideast, Ltd.*, 800 F.2d 1577, 1579 (11th Cir.1986) (citing *Currie v. Cayman Resources Corp.*, 595 F.Supp. 1364, 1376 (N.D.Ga.1984)). The Court of Appeals for the Eleventh Circuit has held, "motions to dismiss for failure to state a claim should be denied unless it appears beyond doubt that the plaintiff can prove no set of facts in support of its claims." *Jackam*, 800 F.2d at 1579 (quoting *Bracewell v. Nicholson Air Servs., Inc.*, 680 F.2d 103, 104 (11th Cir. 1982)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). Furthermore, the court notes that in considering whether a plaintiff's complaint, and each count thereof, fails to state a claim upon which relief can be granted, the court looks to not whether the plaintiff may ultimately prevail on the merits, but whether the "allegations are sufficient to allow them to conduct discovery in an attempt to prove their allegations." *Jackam*, 800 F.2d at 1579–80.

■ The court also stresses that on a motion to dismiss for lack of subject matter jurisdiction, Rule 12(b)(1) of the *Federal Rules of Civil Procedure*, the nonmoving party has the burden of showing that it properly invoked the court's jurisdiction. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 511 (5th Cir.), *cert. denied*, 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980).[2] In ruling on the motion, the court is to "consider the allegations of the complaint as true." *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897, 102 S.Ct. 396, 70 L.Ed.2d 212 (1981).

## FACTS AND PROCEDURAL HISTORY

This action is brought by Carolyn Missildine on her own behalf, on behalf of the estate of her son, Robert Carl Missildine (hereafter "Mr. Missildine"), and on behalf of his four minor children. The plaintiff essentially alleges that two Montgomery City Police Officers, defendants Phillips and Dettmar, used excessive force in arresting Mr. Missildine, thereby violating Mr. Missildine's constitutional rights and violating certain state laws.

On June 29, 1993, the two officers allegedly assaulted and severely beat Mr. Missildine as he attempted to run to the home of his sister where his brother and sister-in-law were staying. Mr. Missildine allegedly suffered serious physical and mental injuries as a proximate result of said beating, *i.e.* a broken nose, facial traumas together with several lacerations and bruises which required immediate medical treatment and subsequent hospitalization. In fact, the injuries were so severe that Mr. Missildine required surgery.

The plaintiff also alleges that on June 29, 1993, subsequent to the beating of Mr. Missildine, defendant Phillips fabricated two sep-

---

1. Rule 12(b)(6) of the *Federal Rules of Civil Procedure* permits a party to plead or move for dismissal of a complaint if that complaint fails to state a claim upon which relief may be granted.

2. Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding authority in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

arate criminal complaints regarding the events which took place on June 29, 1993. The plaintiff contends that the allegations set forth by defendant Phillips were false or in reckless disregard of the truth.

On August 9, 1994, Mr. Missildine died of an apparent suicide. The plaintiff contends that if Mr. Missildine committed suicide, it was due to the brutal beating he suffered at the hands of the two police officers. Before his tragic death, Mr. Missildine did not file a lawsuit, but rather notified the City of Montgomery, Alabama, pursuant to § 11–47–23 of the *Code of Alabama.*

## DISCUSSION

### MOTIONS TO DISMISS COMPLAINT

The defendants move the court to dismiss the plaintiff's complaint on the grounds that the claims alleged therein abated with the death of Mr. Missildine and that the defendants are shielded by qualified immunity from the § 1983 action against them in their individual capacities. Since the abatement issue is dispositive of the motions, the court will not discuss the defendants' contention of qualified immunity.

### *Alabama Survivorship Law*

The defendants contend that on its face, the plaintiff's complaint establishes that all of the claims alleged therein abated with the death of Robert Missildine. Specifically, the defendants assert that before his death, Mr. Missildine filed no action based on his alleged injuries of June 29, 1993, and therefore, this action died with him. In support thereof, the defendants argue that "[a] claim sounding in tort for which no action has been filed does not survive death in favor of the personal representative." *See Gillilan v. Federated Guaranty Life Ins. Co.,* 447 So.2d 668, 674 (Ala.1984) (citing Ala.Code § 6–5–462). Rather, "the action dies with the person." *McDowell v. Henderson Mining Co.,* 160 So.2d 486, 488 (Ala.1963). On the other hand, the plaintiff contends that Mr. Missildine commenced this action on December 3, 1993, before his death, pursuant to Ala.Code §§ 11–47–23 and 11–47–190 thru 192. As such, the plaintiff asserts that upon Mr. Mis-

sildine's death the action survived under § 6–5–462 of the *Code of Alabama.*

At the outset, the court notes that it will refer to state law to determine if this action has survived the death of Mr. Missildine. *See Gilmere v. City of Atlanta,* 737 F.2d 894, 898 n. 8 (11th Cir.1984), *cert. denied,* 476 U.S. 1115, 106 S.Ct. 1970, 90 L.Ed.2d 654 (1986); *Hess v. Eddy,* 689 F.2d 977 (11th Cir.1982), *cert. denied,* 462 U.S. 1118, 103 S.Ct. 3085, 77 L.Ed.2d 1347 (1983). Ala. Code § 11–47–23 provides in part:

> All claims against the municipality … shall be presented to the clerk for payment within two years from the accrual of said claim or shall be barred. Claims for damages growing out of torts shall be presented within six months from the accrual thereof or shall be barred.

Further, Ala.Code § 11–47–192 requires that a sworn statement describing the incident be filed with the clerk before any relief will be awarded. The Supreme Court of Alabama has held that these two provisions are to be read together. *Howell v. City of Dothan,* 234 Ala. 158, 174 So. 624, 628 (1937). Ala. Code § 6–5–462 basically provides that all claims not of an equitable nature which are filed qualify for survival. Thus, the essential question before the court is whether Mr. Missildine's presentment of his claim to the Montgomery City Clerk qualified his claims against the City for survival under § 6–5–462.

Both the Eleventh Circuit and the Supreme Court of Alabama have answered this question in holding that the tort claim notification requirement set forth in the above provisions does not apply to § 1983 actions. *Acoff v. Abston,* 762 F.2d 1543, 1546 (11th Cir.1985); *Morrow v. Town of Littleville,* 576 So.2d 210, 216 (Ala.1991); *see also Patrick v. City of Florala,* 793 F.Supp. 301, 303 (M.D.Ala.1992). The court also notes that under Alabama law, as the defendants have correctly cited, "[a] claim sounding in tort for which no action has been filed does not survive death in favor of the personal representative." *Gillilan v. Federated Guaranty Life Ins. Co.,* 447 So.2d 668, 674 (Ala. 1984) (citing Ala.Code § 6–5–462). "The action die[s] with the person." *McDowell v.*

*Henderson Mining Co.,* 276 Ala. 202, 160 So.2d 486, 488 (1963). As a result of the foregoing authority, the court finds that Mr. Missildine's presentment of his claim to the Montgomery City Clerk did not qualify his claim for survival.

The plaintiff also contends that this action survives the death of Mr. Missildine under Alabama's wrongful death statute, Ala.Code § 6–5–410.[3] To be actionable under Alabama's wrongful death statute, the tort must have been the cause of death.[4] The defendants contend that the allegedly tortious actions of defendants Phillips and Dettmar were not the factual or proximate cause of Mr. Missildine's death. Therefore, the defendants conclude that any tort action Mr. Missildine may have had against them, before he took his life, died with him and is not actionable under § 6–5–410. In determining the applicability of § 6–5–410, the only issue before the court is whether the defendant officers' actions were the factual and proximate cause of Mr. Missildine's suicide. In other words, the court must address whether Mr. Missildine's subsequent act of intentionally and deliberately killing himself was unforeseeable as a matter of law and sufficiently culpable to supersede the defendants' negligence as the proximate cause of Mr. Missildine's death.

In *Gilmore v. Shell Oil Co.,* 613 So.2d 1272 (Ala.1993), the Supreme Court of Alabama adopted the general rule that, "in the area of civil liability for suicide, '[n]egligence actions for the suicide of another will generally not lie since the act [of] suicide is considered a *deliberate intervening act* exonerating the defendant from legal responsibility.' "[5] *Id.* at 1276 (emphasis in original) (quoting *Krieg v. Massey,* 239 Mont. 469, 781 P.2d 277 (1989)). The Court also recognized that there are two exceptions to the general rule:

> "The first exception deals with causing another to commit suicide.... The second exception allows the imposition of a duty to prevent suicide but only in a custodial situation where suicide is foreseeable [, typically in the case of] hospitals or prisons." The first exception arises in cases where a defendant's conduct "causes a mental condition in the decedent that proximately results in an uncontrollable impulse to commit suicide or that prevents the decedent from realizing the nature of his act."

*Id.* (internal citations and emphasis omitted). The second exception does not apply in this case as the facts reveal that the defendants were not in a custodial relationship with Mr. Missildine. Therefore, the court's analysis will focus on the first exception.

■ The Supreme Court of Alabama has not expressly addressed the first exception. However, the "irresistible impulse" decisions in other jurisdictions all generally interpret the first exception as follows: "where the

---

3. The court notes that there is no prohibition against the plaintiff pleading two alternative, inconsistent and mutually exclusive claims of wrongful death and a survival claim for personal injury in her complaint. *Ex parte King,* 591 So.2d 464 (Ala.1991). However, the court stresses that the plaintiff can only recover under one of the remedies. *Id.*

4. Ala.Code § 6–5–410, entitled "Wrongful act, omission, or negligence causing death", states:
(a) A personal representative may commence an action and recover such damages as the jury may assess in a court of competent jurisdiction within the State of Alabama, and not elsewhere, for the wrongful act, omission, or negligence of any person ..., whereby the death of his testator or intestate was caused, provided the testator or intestate could have commenced an action for such wrongful act, omission, or negligence if it had not caused death.

5. The court notes that, as a general rule, a reasonably foreseeable intervening force will not

relieve a person of liability. The same is true where the intervening force is the normal incident of the risk created. However, where suicide is the intervening force, practically all courts have held that such act is independent and new and that there is a lack of causation between the wrongful act and the death. Therefore, the defendant is not liable for the suicide. *See* 11 A.L.R.2d 757 (lists cases supporting this rule). Furthermore, regarding situations where there are prior physical injuries leading to suicide, courts have generally held that the third person, whose negligence created the state of mind in the injured person, is not civilly responsible for the suicide. *See id.* at 758 (lists cases supporting this rule). In addition, in the few cases in which the question has arisen, courts have held that where the suicide results from a wrongful accusation or wrongful arrest, the defendant is not civilly liable. *Id.* at 762 (summarizing the law regarding this area).

wrongful act produces such a rage or frenzy that the injured person destroys himself during such rage or frenzy, or in response to an uncontrollable impulse, the act is considered as within and a part of the line of causation from the defendant's negligent injury to the death, and the defendant's act is the proximate cause of death." *Id.* at 758 (lists cases supporting this rule). Furthermore, the court acknowledges that irresistible impulse is defined as follows:

> an impulse produced by and growing out of some mental disease affecting the volition, as distinguished from the perceptive powers, so that the person afflicted, while able to understand the nature and consequence of the act charged against him, and to perceive that it is wrong, is unable, because of such mental disease, to resist the impulse to do it.

*Hare v. City of Corinth,* 814 F.Supp. 1312, 1326 (N.D.Miss.1993) (quoting *Christian v. Commonwealth,* 202 Va. 311, 117 S.E.2d 72, 74 (1960)). This impulse "is distinguished from mere passion or overwhelming emotion not growing out of, and connected with, a mental disease of the mind." *Hare,* 814 F.Supp. at 1326 (citing *State v. Hartley,* 90 N.M. 488, 565 P.2d 658, 661 (1977)); *see also* 14 Am.Jur. *Criminal Law* § 35 at 793.

▆▆ Considering all the facts in the complaint as true and the inferences therefrom in favor of the plaintiff, the court finds that the evidence is insufficient to support a claim of wrongful death as a result of an irresistible impulse on the part of Mr. Missildine to commit suicide. Specifically, the court finds persuasive the fact that Mr. Missildine committed suicide approximately fourteen months after the alleged beating. Clearly, this time frame is long enough to doubt the irresistibility of Mr. Missildine's actions due to the alleged beating.[6]

### MOTION TO DISMISS AMENDED COMPLAINT

The defendants Phillips and Dettmar also move the court to dismiss the plaintiff's

amended complaint due to its failure to state a claim upon which relief can be granted. Alternatively, the defendants contend that they are entitled to qualified immunity on all § 1983 claims alleging that they are liable in their individual capacities for violating family associational rights. Since the court finds that the amended complaint fails to state a claim upon which relief can be granted, the court will not address the defendants' contention of qualified immunity.

The amended complaint alleges that the defendants intentionally deprived the plaintiff and Mr. Missildine's children of companionship, society, and association with Mr. Missildine and intentionally prevented her from rendering aid to him, thereby causing her emotional distress. The defendants contend that the law is clear in this area in that federal courts do not permit a § 1983 action based on state actions that only incidentally affect the parent-child relationship and do not permanently deprive the parent or child of family association. As such, they contend the amended complaint should be dismissed, because defendants Phillips and Dettmar did not permanently deprive the plaintiffs of family association with Mr. Missildine. Rather, they contend that Mr. Missildine's suicide permanently deprived the plaintiffs of any association with him.

On the other hand, the plaintiff asserts that the defendants have no governmental interest in preventing the family of Mr. Missildine from communicating with him or interfering with the companionship, society and association they had with him. The plaintiff argues that once Mr. Missildine indicated that he did not want to answer the questions of defendants Phillips and Dettmar, the defendants had no interest in Mr. Missildine's conversation and association with his mother, family or children.

▆▆ The court recognizes that "it is well established that there is a broadly defined liberty interest in preserving the integrity and stability of the family from intervention

---

6. The court acknowledges that the death of Mr. Missildine is a tragedy, and, *if true,* the beating is strongly condemned by the court, unless legally justified; nevertheless, the court is obligated to

follow the law as set forth by the Supreme Court of the United States, the Eleventh Circuit and the Supreme court of Alabama.

by the state without due process of law." *Hubbard v. City of Middletown*, 782 F.Supp. 1573, 1580 (S.D.Ohio 1990) (quoting *Greene v. City of New York*, 675 F.Supp. 110, 113 (S.D.N.Y.1987)); *see also Moore v. City of East Cleveland*, 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977); *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); *Wisconsin v. Yoder*, 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). "In fact, many courts have recognized a § 1983 cause of action where the state has deprived a parent, child or spouse of the right of the family to remain together." *Hubbard*, 782 F.Supp. at 1580 (citations omitted). However, the cases finding a violation require that the state action be directly aimed at the parent-child relationship and permanently deprive the parent or child of family association.

■ For instance, in *Pittsley v. Warish*, 927 F.2d 3 (1st Cir.), *cert. denied*, 502 U.S. 879, 112 S.Ct. 226, 116 L.Ed.2d 183 (1991), the First Circuit stated that "[t]o establish a violation of a right to familial associational privacy, the state action must be directly aimed at the parent-child relationship." *Id.* at 8. The court went on to emphasize that "most courts which have recognized a protected right to familial association, and allowed parent or their children to recover under § 1983 for alleged unconstitutional conduct primarily directed toward another family member have done so only where the plaintiffs have alleged permanent, physical loss of association of an immediate family member as a result of unlawful state action." *Id.* (citations omitted).

In *Hubbard v. City of Middletown*, 782 F.Supp. 1573 (S.D.Ohio 1990), the court succinctly summarized the law in stating that "[t]hose cases finding a constitutional deprivation under the fourteenth amendment concerned only the situation where a family member had been completely removed from the family unit due to state action (e.g. where a family member died due to excessive force by police officers or where a child was removed completely from parental custody without a hearing or a court order)." *Id.* at 1580. Furthermore, in *Willard v. City of*

*Myrtle Beach*, 728 F.Supp. 397 (D.S.C.1989), the court stated that it is clear that all cases which have recognized such a cause of action have done so only within "the factual context of a permanent, physical separation of parent and child, such as allegations of unlawful killing by individual state actors." *Id.* at 404. The court will now apply these principles to the present case.

■ The plaintiff contends that defendants Phillips and Dettmar violated Mr. Missildine's children's right to familial association by allegedly using excessive force in arresting Mr. Missildine while the children sat in a nearby car. Pl.'s Amended Compl. at ¶ 8b. The plaintiff also contends that the defendants violated her right, as Mr. Missildine's mother, to associate with him by allegedly refusing to allow her to render aid to Mr. Missildine after his arrest. *Id.* at ¶ 8c. The plaintiff further contends that as a result of defendants Phillips and Dettmar's alleged use of excessive force, Mr. Missildine became so despondent that he eventually "reduced his contact with his family to such a point that by the time of his death his relationship with Carolyn Missildine and his family was almost a nullity." *Id.* at ¶ 8d. As a result of the defendants' actions, the plaintiff contends that Mr. Missildine's children and herself "were injured and have suffered great emotional distress, fear, mental anguish, financial expense, and other great suffering and loss." *Id.* at ¶ 21a.

Even assuming the above as true, the court finds that the facts alleged still fail to show a permanent, physical loss of association with Mr. Missildine as a result of unlawful state action. In fact, the complaint states that Mr. Missildine only "reduced his contact with his family," and based on the foregoing authority, this is insufficient to support a constitutional deprivation. Accordingly, the court finds that the amended complaint fails to allege a constitutional cognizable claim as Mr. Missildine was not permanently removed from his family.

## CONCLUSION

For the foregoing reasons, the court finds that defendants D.F. Phillips, R.L. Dettmar,

City of Montgomery, City of Montgomery Police Department, Emory Folmar and John Wilson's motions to dismiss are due to be granted. A judgment in accordance with this memorandum opinion will be entered separately.